IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00856-KAS

J.M.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Social Security Administrative Record** [#9], filed May 24, 2024, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits pursuant to Title II and for supplemental security income pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed an Opening Brief [#11] (the "Brief"), Defendant filed a Response [#13] in opposition, and Plaintiff filed a Reply [#14]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[2]

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#10]; *Reassignment* [#15].

## I. Background

On October 30, 2020, Plaintiff protectively filed an application for disability and disability insurance benefits under Title II, and on November 3, 2020, Plaintiff filed an application for supplemental security income under Title XVI. Tr. 27.[3] In both applications, Plaintiff alleged disability beginning January 1, 2020. *Id.* His claims were denied on June 9, 2021, and again upon reconsideration on February 14, 2022. *Id.* On July 26, 2023, an administrative law judge (ALJ) issued an unfavorable decision. Tr. 43-44. On October 12, 2023, the Appeals Council denied Plaintiff's request for review. Tr. 10.

The ALJ first determined that Plaintiff met the Act's insured status requirements through December 31, 2025, and that he had not engaged in substantial gainful activity since January 1, 2020, the alleged onset date. Tr. 30. The ALJ then found that Plaintiff suffers from seven severe impairments: (1) right leg arteritis, (2) left Achilles tendinitis, (3) congestive heart failure, (4) alcoholic cardiomyopathy, (5) hypertension, (6) type II diabetes mellitus, and (7) chronic kidney disease. *Id.* However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 33.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work,[4] including

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9-1 through 9-10, by the sequential transcript numbers instead of the separate docket numbers.

[4] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted

2

> [T]he ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; except he can stand and/or walk for two hours total in an eight-hour workday. He can frequently balance and stoop. He can occasionally kneel, crouch, crawl, and climb. He can tolerate occasional exposure to working at unprotected heights and operating heavy machinery.

Tr. 34. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could not perform his relevant past work as a maintenance supervisor. Tr. 42. The ALJ further found that Plaintiff was an "individual closely approaching advanced age" on the alleged disability onset date but noted that Plaintiff subsequently changed category to "advanced age (20 C.F.R. 404.1563 and 416.963)." *Id.* The ALJ noted that Plaintiff had "at least a high school education" and that he has acquired transferable work skills from past relevant work. *Id.* The ALJ concluded that, considering Plaintiff's age, education, past relevant work experience, and RFC, and given the VE's testimony, there were a significant number of jobs in the national economy which Plaintiff could have performed, including the representative occupations of "Department Manager," with 16,000 jobs in the national economy; "Equipment Manager," with 6,000 jobs in the national economy, "Maintenance Clerk," with 36,000 jobs in the national economy, and "Distribution Manager," with 33,000 jobs in the national economy. Tr. 42-43. Therefore, the ALJ found that Plaintiff was not disabled at step five. Tr. 43-44.

---

may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [one] must have the ability to do substantially all of these activities. If someone can do light work, [the agency] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. §§ 404.981, 416.1481. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any

4

substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

**A.     The Five-Step Framework**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The

5

Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521[5]). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations," and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(1), (a)(4), 416.945(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Further, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

---

[5] Title XVI contains an identical regulation at 20 C.F.R. § 416.921.

**B.    Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Rather, "[the Court] review[s] the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g); *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "failure to apply the correct legal standard or to provide th[e] [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal" separate from a lack of substantial evidence. *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ erred by (1) failing to adequately evaluate his nonsevere mental impairments; and (2) failing to "adequately assess [his] complaints as well as the supportability and consistency of the medical opinions due to the Plaintiff's residence being on a ranch, which resulted in illogical findings." *Brief* [#11] at 9, 11-22.[6]

**A.      Evaluation of Nonsevere Mental Impairments in the RFC Assessment**

Plaintiff argues that the ALJ inadequately evaluated his nonsevere mental impairments because, at step three, the ALJ assessed mild limitations in certain areas of mental functioning, but the assessed RFC included no corresponding restrictions. *Brief* [#11] at 11-12. Defendant responds that this argument is "necessarily premised on a presumption that mild limitation . . . equates to the need for workplace restrictions," but that "[n]o such presumption exists." *Response* [#13] at 10.

The first problem with Plaintiff's argument is that he conflates mental *impairments* with functional *limitations*. *See, e.g.*, *Brief* [#11] at 13 ("Drs. Dara Goosby and David Benson also provided opinions regarding the Plaintiff's mild mental *impairments*, with some additional moderate mental *impairments* that the ALJ did not find persuasive . . . The ALJ's failure to explain how mild mental *limitations* were considered at steps four and five is not harmless[.]") (emphasis added). These terms are not interchangeable, and neither finding an impairment nor a functional limitation requires the ALJ to assess a workplace limitation.

---

[6] Because Plaintiff's Brief [#11] includes a cover page, the blue court-stamped page numbers do not match the native page numbers. Throughout this Order, the Court cites to the document's native page numbers.

Under the Act, a "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). For example, Plaintiff's medically determinable mental impairments included "adjustment disorder, unspecified anxiety disorder, depressive disorder, and alcoholism[.]" Tr. 31. By contrast, a person's degree of functional limitation reflects their "ability to function independently, appropriately, effectively, and on a sustained basis" in various broad functional areas. *E.R.D. v. O'Malley*, No. 23-cv-02155-LTB, 2024 WL 3276158, at *4 (D. Colo. July 2, 2024) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(b)[7]). By contrast, a claimant's RFC is "what [he] is still functionally capable of doing on a regular and continuing basis, despite his impairments: [his] maximum sustained work capability." *Williams*, 844 F.2d at 752.

Here, the ALJ considered Plaintiff's medically determinable mental impairments, including adjustment disorder, unspecified anxiety disorder, depressive disorder, and alcoholism, singly and in combination, and found that they cause no more than mild functional limitation in the areas of "understanding, remembering, or applying information"; "interacting with others"; "concentrating, persisting or maintaining pace"; and "adapting or managing oneself". Tr. at 31-32. In doing so, she reviewed Plaintiff's treatment notes, consultative reports, and claimant's reports and considered Plaintiff's daily living activities. *Id.* The Court finds no error in the ALJ's step-three analysis of Plaintiff's mental impairments and degrees of functional limitation.

---

[7] Title XVI contains an identical regulation at 20 C.F.R. § 416.925.

As for Plaintiff's argument that "[t]he ALJ's failure to consider, explain or include mild limitations in the RFC is an error," the Court is unpersuaded. *Brief* [#11] at 14. Functional limitations are not the same as workplace limitations, and even a moderate limitation in a particular functional area does not always translate to a corresponding RFC limitation. *Cf. Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (stating that even a "finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment"); *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (stating that "[t]he ALJ was under no obligation to include limitations in social functioning in [the claimant's] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis"). Instead, in assessing an RFC, the ALJ must identify relevant conditions and separately determine whether their symptoms require any workplace limitations. *Cf. Gallegos v. Kijakazi*, No. 21-1169 DHU/GJF, 2023 WL 2553922, at *11 (D.N.M. Mar. 17, 2023) (stating that "evidence of a mental condition does not equate to a finding of limitation, which makes sense given step four's analytical two-step of (1) identifying a condition and (2) separately assessing whether its symptoms, if any, actually affect the RFC").

Here, after discussing medical opinions at length, the ALJ explained that she had considered Plaintiff's nonsevere mental impairments in assessing his RFC even though she did not discuss them in detail at this step. *See* Tr. 42 (noting that Plaintiff's "nonsevere impairments, including . . . mental health issues, while not discussed in detail in this section, were considered in the formulation of [his] [RFC] pursuant to SSR 96-8p" and finding that those impairments did not warrant any additional restrictions). Plaintiff has

given the Court no reason to doubt the ALJ's express statement that she considered his nonsevere mental impairments in assessing his RFC. *Cf. Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (describing the "general practice" of "tak[ing] a lower tribunal at its word when it declares that it has considered a matter").

Plaintiff does not identify any impairments the ALJ failed to consider and does not identify any workplace limitations that she should have assessed. He vaguely suggests that "even mild limitations in [concentration, persistence and pace] can impact the ability to perform" semi-skilled or skilled jobs, but he fails to explain how, specifically, the RFC limitations would need to be changed to address symptoms of his nonsevere mental impairments. *Cf. Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (taking issue with the plaintiff's failure "to explain specifically what additional limitations were needed based on his anxiety or any other impairment"). At most, Plaintiff states a disagreement with the ALJ's conclusions, "but mere difference of opinion does not empower [a] court to usurp the SSA's role as factfinder." *Gallegos*, 2023 WL 2553922, at *11. Accordingly, the Court finds no error in the ALJ's consideration of Plaintiff's nonsevere mental impairments.

**B.      Ranching Activities**

Plaintiff argues that the ALJ failed to adequately evaluate Plaintiff's subjective complaints "because [she] very heavily relied on the fact that Plaintiff's residence is located on a ranch," and that she failed to adequately consider some of the expert medical opinions "based on the illogical decision that Plaintiff is 'managing a 360-acre ranch.'" *Brief* [#11] at 18. The Court construes Plaintiff's Brief [#11] as raising two separate but related arguments on this point: First, that the ALJ's reliance on Plaintiff's ranching activities resulted in an RFC that is logically inconsistent with Plaintiff's daily activities;

and second, that the ALJ relied on Plaintiff's ranching activities rather than properly evaluating various medical opinions for supportability and consistency. The Court considers each in turn.

### 1. Logical Consistency

Plaintiff argues that "[t]he ALJ's assumption that the Plaintiff is performing physically demanding work 'managing' a ranch is inconsistent with the ALJ's own decision that the Plaintiff is not capable of walking and/or standing more than two hours each day." *Brief* [#11] at 18. He insists that his involvement with the ranch is minimal and therefore consistent with his medical records, and that "if [he] is truly limited to standing and walking two hours per day, it would be impossible for him to be 'managing' or otherwise taking care of a ranch full time." *Brief* [#11] at 18, 20. Elsewhere, Plaintiff asserts that ranch management "requires many different abilities" and argues that ranch management is beyond the scope of his current abilities. *Reply* [#14] at 4.

However, Plaintiff does not identify any inaccurate assumptions the ALJ made about his ranching activities. The ALJ did not describe Plaintiff as "taking care of a ranch full time" or speculate that his ranching activities were "physically demanding"; rather, she cited various medical records that reported Plaintiff's own words. *See Brief* [#11] at 18, 20; *but see* Tr. 38-39. For example, Plaintiff "report[ed] being physically active throughout the week on the ranch" and "affirmatively put off shoulder surgery, as he was busy with calving season." Tr. 39 (citing Tr. 1878), 38 (citing Tr. 1881). Plaintiff told other providers that he "walks his dogs and then checks on his horses and cows"; that he "continues to work outside on his property"; and that he was "currently active with work associated with

12

ranching." Tr. 847, 922, 1002. In his January 17, 2021 Function Report, Plaintiff wrote that his daily activities included checking and helping feed the cows. Tr. 364.

At the January 26, 2023 oral hearing, the ALJ directly asked Plaintiff about the ranching activities he had reported to providers, like his cardiologist. Tr. 81-82. Plaintiff denied that he was feeding the cows or having to move them, and said his work on the ranch was limited to "check[ing] fences and stuff" and "check[ing] the cows and stuff." *Id.* He denied caring for horses at all. Tr. 82. Plaintiff's testimony thus contradicted his reports to medical providers. The ALJ concluded that, "while [Plaintiff] attempted to minimize his activities on the ranch at [the oral] hearing, his testimony is not supported by his statements to providers, where it is clear he is an active participant on the ranch." Tr. 39.

In part, these discrepancies informed the ALJ's finding that Plaintiff's "allegations are not well supported to [sic] the medical findings, and generally not compatible or reasonably consistent with the medical evidence of record and all other evidence; therefore his allegations are not fully persuasive." Tr. 38. The ALJ was careful to explain that she did not find an intentional lack of consistency, "just that [Plaintiff] can perform at higher levels than he states, or perceives he can." *Id.* The ALJ had a duty to resolve any conflict between Plaintiff's testimony and the medical records, and she did so. *Cf. Casias*, 933 F.2d at 801 ("This case thus presents the not uncommon situation of conflicting medical evidence, a situation in which the trier of fact has the duty to resolve that conflict.") (internal quotation omitted).

Plaintiff fails to identify any legal error in the ALJ's analysis, her reliance on medical reports, or her decision to resolve inconsistencies by crediting his reports to providers

over his oral hearing testimony. The Court finds no logical inconsistency and no error in the ALJ's discussion of Plaintiff's ranching activities.

### 2. Medical Opinions

On a related note, Plaintiff argues that the ALJ's purported reliance on his ranching activities caused her to improperly reject the opinions of Dr. Gurcharan Singh; Brian Jackson, PA-C; Dr. Michael Keane; and Dr. David Benson. *Brief* [#11] at 5, 20.[8]

Two substantively identical regulations, 20 C.F.R. §§ 404.1520c and 416.920c, explain how an ALJ considers medical opinions and prior administrative medical findings. Supportability and consistency are the most important factors, and the ALJ "*will* explain how [she] considered the supportability and consistency factors for a medical source's medical opinions[.]" 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (emphasis added). Thus, courts have found reversible error where an ALJ fails to discuss one or both factors. *See, e.g.*, *Crystal R.E. v. Kijakazi*, No. 20-cv-00319-SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022) ("Regardless of any other factors, the ALJ must explain how [she] considered the two 'most important factors'—supportability and consistency.") (emphasis in original) (citing 20 C.F.R. § 404.1520c(b)(2)); *see also J.T.L. v. Kijakazi*, No. 22-cv-02343-NYW, 2023 WL 5017241, at *5 (D. Colo. Aug. 7, 2023) (explaining that, at minimum, the ALJ must provide an explanation that communicates how she considered

---

[8] Plaintiff vaguely assigns error to the ALJ's consideration of "countless medical opinions suggesting disabling limitations" and "many expert medical opinions, including mental health opinions," but he only identifies four medical sources or reviewers by name: Dr. Singh, Mr. Jackson, Dr. Keane, and Dr. Benson. *Brief* [#11] at 20, 21. To the extent Plaintiff objects to the ALJ's consideration of other opinions, he has not developed that argument, so it is waived. *See, e.g.*, *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) (holding that issues presented "only in a perfunctory manner" in an opening brief were waived); *Nelson v. City of Albuquerque*, 921 F.3d 925, 931 (10th Cir. 2019) (finding that appellant had waived argument by failing to adequately develop it).

the factors of consistency and supportability for each medical source opinion); *S.P. v. Kijakazi*, No. 22-1077-SAC, 2022 WL 4465080, at *4 (D. Kan. Sept. 26, 2022) (finding that "the ALJ's failure to address supportability is sufficient to warrant remand"). However, the ALJ's discussion of supportability and consistency need not be detailed or lengthy—rather, it must be enough for the Court to follow her reasoning. *J.T.L.*, 2023 WL 5017241, at *5; *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (stating that the ALJ must consider whether a medical source opinion is well-supported and, "[i]f the answer to this question is 'no,' then the inquiry at this stage is complete").

In addition to these two mandatory factors, the ALJ may, but is not required to, explain how she considered other factors, including length of treatment relationship and specialization. 20 C.F.R. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5).

      **a.**      **Gurcharan Singh, MD**

Dr. Singh, a state agency medical consultant, opined that Plaintiff can perform "sedentary work with push/pull, postural, and environmental limitations[.]" Tr. 39. The ALJ found this opinion unpersuasive because, while it was supported by medical evidence presented at the reconsideration level, it was not supported by Plaintiff's "repeated reports to providers" about his physical activities at the ranch. Tr. 39. She also found Dr. Singh's opinion inconsistent with medical evidence presented at the hearing level that showed normal physical examination findings despite reported intermittent shortness of breath. *Id.* The ALJ's discussion of Dr. Singh's opinion is admittedly brief, but she considered the required factors of supportability and consistency. The Court cannot reweigh the evidence at this stage, and even if it could, Plaintiff has given no reason to question the ALJ's analysis. He does not explain how the ranching activities he reported to providers (e.g.

15

calving, feeding cows, and checking fences) would support or be consistent with Dr. Singh's sedentary work limitation. Therefore, the Court finds no error in the ALJ's consideration of Dr. Singh's opinion.

### b.      Michael Keane, DO

Dr. Michael Keane opined that Plaintiff could perform light work with postural limitations and the use of a cane. Tr. 40 (citing Tr. 522-531). The ALJ found that this opinion was supported by Dr. Keane's examination showing Plaintiff "exhibited painful range of motion of his hips, antalgic gait favoring his left hip, and decreased sensation in his left ankle." *Id.* However, Dr. Keane's opinion was inconsistent with the overall medical record, including more recent examination notes showing "relatively normal findings and no evidence of a need for a cane." *Id.* She also noted that Dr. Keane's medical opinion was based on just one exam and his review of just one April 2020 treatment note which was "not supportive of the overall record." *Id.* The ALJ found no support anywhere in the record for the need for a cane, including Plaintiff's own reports of his activities on the ranch. *Id.* Thus, Plaintiff's ranching activities were just one of several reasons the ALJ found Dr. Keane's opinion unpersuasive. Crucially, the ALJ considered both supportability and consistency, and her findings are supported by substantial evidence.

### c.      David Benson, Ph.D.

Dr. Benson opined that Plaintiff "has moderate limitations in understanding, remembering, and carrying out complex tasks and moderate limitations in responding appropriately to usual work situations and chances [sic] in routine work settings." Tr. 41. While the ALJ found that this opinion was supported by examination findings that Plaintiff "exhibited variable performance on short-term memory and attention tasks, blunted affect,

16

and appear[ed] preoccupied," she found it unpersuasive because it was based on a single exam and was inconsistent with other mental status findings showing intact memory and concentration and normal behavior. *Id.* The ALJ also pointed out that Plaintiff reported his ranching activities to Dr. Benson, who failed to probe any further or reconcile these facts with his moderate limitations opinion. *Id.* (citing Tr. 383-384). Plaintiff argues that the ALJ "erred in using this single fact regarding the location of [his] residence in evaluating credibility," but this is inaccurate. *Brief* [#11] at 20. The ALJ did not reject Dr. Benson's opinion based on the location of Plaintiff's residence, but due to Dr. Benson's failure to flesh out Plaintiff's self-reported ranching activities. Tr. 41. Moreover, the ALJ's supportability and consistency analysis is apparent from her decision, and the Court finds no error.

### d.   Brian Jackson, PA-C

Finally, Mr. Brian Jackson, PA-C, has been Plaintiff's primary medical provider for some time, a factor the ALJ considered. Tr. 36. The ALJ found unpersuasive Mr. Jackson's opinion that Plaintiff could "perform sedentary work with additional sitting limitations, time-off tasks limitations, and environmental limitations, and he will need to elevate his legs during the day and he will be off-task at least 25% of the workday." Tr. 39-40. She found that Mr. Jackson's opinion was "not well supported by his own treatment notes," such as the notes from a February 2020 visit showing normal muscle tone and strength, good pedal pulses, and normal sensation to fine touch. Tr. 40. Mr. Jackson also opined that Plaintiff has "moderate limitations [in] concentration, social interaction, and responding appropriately to changes in the work setting[.]" Tr. 41 (citing Tr. 502-512). However, the ALJ found this opinion unpersuasive because it was "supported by the

17

claimant's subjective allegations rather than objective findings." *Id.* at 41. As for consistency, the ALJ found this opinion was "inconsistent with medical evidence, including his own treatment notes," and that "the overall record is not supportive of [Mr. Jackson's] findings" that Plaintiff was limited to sedentary work. Tr. 41, 40. The ALJ did not rely solely on Plaintiff's ranching activities. *Cf. Brief* [#11] at 21. Rather, she considered the required factors of supportability and consistency and found Mr. Jackson's opinions unpersuasive.

In sum, the record shows that the ALJ considered the required factors of supportability and consistency in determining the persuasiveness of Dr. Singh, Dr. Keane, Dr. Benson, and Mr. Jackson's opinions. She did not rely solely on Plaintiff's residence at a ranch, although she reasonably concluded that Plaintiff's reported ranching activities were inconsistent with or did not support certain providers' limitations. In essence, Plaintiff disagrees with the ALJ's conclusion as to these four medical sources and asks the Court to reweigh the evidence, something it cannot do on substantial evidence review. *Cf. Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court finds that the ALJ's discussion of medical source opinions was supported by substantial evidence and was free of legal error.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: November 27, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge